FILED
2020 Aug-05  AM 11:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RICKEY GARNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:19-cv-00180-LSC |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

## I. Introduction

The plaintiff, Rickey Garner ("Garner"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for a period of disability, Supplemental Security Income ("SSI"), and Disability Insurance Benefits ("DIB"). Garner timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Garner was 53 years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he obtained a twelfth-grade education and technical training at Lawson Technical College.  (Tr. at 23, 33-34, 40-41, 62-63, 141,

169, 256.) His past work experience includes employment as a kitchen helper, a janitor, and an industrial truck operator. (Tr. at 23, 257.) Garner claims he became disabled on December 31, 2015, as a result of several conditions, but generally impairments involving his neck, back, and right leg. (Tr. at 164, 186.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe"

2

and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *Id.* The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. *Id.*

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments

3

does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Garner meets the insured status requirements of the Social Security Act through December 31, 2015. (Tr. at 17.) She further determined that Garner "has not engaged in substantial gainful activity since December 31, 2015, the alleged onset date." (*Id.*) According to the ALJ, Garner's "degenerative disc disease, affective disorder, and anxiety disorder" are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 18.) She did not find Garner's allegations to be totally credible, and the ALJ determined that Garner has the following RFC:

4

> [T]o perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except with the following limitations: he can occasionally climb ramps and stairs, stoop, and crouch; he should never climb ladders, ropes, or scaffolds, kneel, or crawl; he can have only occasional exposure to extremes of cold and vibration; he should have no exposure to hazards such as unprotected heights and dangerous machinery; and he is capable of performing simple, routine tasks in an environment where there are only occasional workplace changes.

(Tr. at 19-20.)

According to the ALJ, Garner "is unable to perform any past relevant work" through the date he was last insured. (Tr. at 23.) The ALJ also determined that Garner is an "individual closely approaching advanced age" at 53 years old. (*Id.*) The ALJ determined that the "transferability of job skills is not material to the determination of disability." (*Id.*) Because Garner cannot perform the full range of medium work due to limitations, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocation Rules as a guideline for finding that there are a significant number of jobs in the national economy that Garner is capable of performing such as hand packager, laundry worker, and sandwich maker. (Tr. at 24.) The ALJ concluded her findings by stating that Garner "has not been under a disability, as defined in the Social Security Act, from December 31, 2015 through the date of this decision." (*Id.*)

## II. Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence'" *Parker*

*v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1989)).

## III. Discussion

Garner claims that the ALJ's decision should be reversed and remanded because the ALJ improperly applied the pain standard by failing to articulate the reasons in the record that discredit his subjective pain testimony.

7

Garner's subjective complaints alone are insufficient to establish a disability. *See* 20 C.F.R. §§ 404.1529(a), 416.926(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a plaintiff claims disability due to pain or other subjective symptoms. The plaintiff must show evidence of the underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of the plaintiff's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); *Wilson*, 284 F.3d at 1225–26. In evaluating the extent to which the plaintiff's symptoms, such as pain, affect his

capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of the plaintiff's symptoms, (3) the plaintiff's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the plaintiff takes to relieve symptoms, and (8) any conflicts between a plaintiff's statements and the rest of evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 16-3p. In order to discredit a plaintiff's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer*, 395 F.3d at 1210.

A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548–49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom.*, *Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Courts in the Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). However, a reversal is warranted if the decision contains no indication of the proper application of the pain standard. "The question is not . . .

whether [the] ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Garner stated that he stopped working on March 1, 2014, because he had to take care of his wife. (Tr. at 168.) Then, he stated that his conditions became severe on February 9, 2016, and he could no longer work. (*Id.*) Garner further stated that due to his neck and back pain, he needs help from his brother in preparing most meals and doing household chores, such as laundry. (Tr. at 176, 261.)

The ALJ noted that the impairments underlying Garner's medical condition could be reasonably expected to cause his alleged symptoms and functional limitations, satisfying the first part of the pain standard. (Tr. at 20.) However, the ALJ found that Garner's statements concerning the intensity, persistence, and limiting effects of these alleged symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.*) The ALJ covered a variety of evidence to support her conclusion, including objective medical evidence, treatment history, and daily activities. (Tr. at 20-23.) Substantial evidence supports the ALJ's conclusion in this case.

### A.     Objective Medical Evidence

The ALJ began by noting that the objective medical evidence does not support the disabling symptoms and limitations alleged by Garner. (Tr. at 20-21.) On February 10, 2016, Garner had a physical examination at Cooper Green Mercy Hospital ("Cooper Green") with Dr. William Mosier. (Tr. at 247-48.) Dr. Mosier found muscle spasms and a decreased range of motion in Garner's neck. (Tr. at 54, 247-48.) However, Garner's straight leg test was negative, and Dr. Mosier discharged Garner with a clinical impression of osteoarthritis. (*Id.*) On April 8, 2016, he returned to Cooper Green complaining of on and off lower back pain. (Tr. at 299.) At the time of his visit, Janice Burrell, a licensed practical nurse, noted in the medical records that he was in no pain. (*Id.*) In addition, Jacqueline Duke, a Certified Registered Nurse Practitioner ("CRNP"), noted that Garner's straight leg test was again negative. (Tr. at 298.) Duke discharged Garner with a clinical impression of muscle spasms of the neck. (*Id.*)

Then, on April 21, 2016, Garner underwent a psychological examination with Dr. Sally Gordon. (Tr. at 256-58.) Garner claimed to have depression stemming from the loss of his wife and his daughter. (*Id.*) Garner claimed to get anxious, nervous, and restless, which

11

prevents him from getting enough sleep. (*Id.*) However, Dr. Gordon noted that he had never received mental health treatments and he denied having suicidal thoughts. (*Id.*) During the examination, Dr. Gordon noted Garner as having a clean appearance and a good rapport. (Tr. at 54, 257.) She also noted that Garner had a good insight into his difficulties despite a somber affect and dysthymic mood. (Tr. at 257.) Though he had a mildly slow gait, Garner had good posture and normal use of his upper extremities. (Tr. at 54, 257.) His reading was slow, and his speech was difficult to understand, but his language skills were normal. (Tr. at 54, 257-58.) Garner was able to read and comprehend, though his intelligence was marked at a borderline to low range. (*Id.*) Additionally, Dr. Gordon noted that he displayed normal judgment for common social dilemmas. (*Id.*)

Dr. Gordon's prognosis detailed that Garner may be unable to continue the type of work he had previously performed. (Tr. at 258.) She noted that Garner may be more suited for a vocational rehabilitation program. (*Id.*) She noted, however, that his difficulty summoning motivation may prevent him from doing so. (*Id.*) Ultimately, Dr. Gordon diagnosed Garner with Unspecified Anxiety Disorder; Major Depressive Disorder, Moderate, rule out ("R/O") psychotic

features; Insomnia Disorder with Non-sleep Disorder Mental Comorbidity and with other Medical Comorbidity; Alcohol Use Disorder; and R/O Borderline Intellectual Functioning. (Tr. at 54, 258.) While Dr. Gordon stated that Garner may have difficulty summoning motivation to participate in a vocational rehabilitation program, the ALJ noted that this opinion was vague and based primarily on the representations by Garner. (Tr. at 22.) The ALJ gave little weight to Dr. Gordon's opinion because Garner did not receive any mental health treatment prior to or following this examination. (*Id.*)

On May 10, 2016, Garner underwent a physical examination by Dr. Celtin Robertson. (Tr. at 261-65.) Garner complained of back pain across the lumbar region, rating it a 10/10 with the pain worsening in the morning. (Tr. at 261.) Garner reported an exacerbation in pain when lifting grocery bags and standing after sitting for a prolonged period of time. (*Id.*) However, he also reported that he is able to take care of his personal needs and prepare simple meals, while also taking the bus when he wants to get out of the house. (Tr. at 39, 261.)

Dr. Robertson found that there was endplate degenerative change at L4-5, but Garner's lumbar spine appeared to be normal. (Tr. at 54, 260.) Dr. Robertson also reported that Garner was able to walk

in the room and sit without assistance. (Tr. at 54, 262.) In addition, Dr. Robertson noted that Garner's gait was normal, but with limited ability to squat. (Tr. at 263.) Garner also had a normal range of motion with the exception of lumbar extension, and his straight leg test was negative for sciatica. (Tr. at 54, 263-64.) Dr. Robertson found no tenderness in Garner's spine. (Tr. at 54, 264.) Garner's motor strength was a 5/5. (*Id.*) Dr. Robertson noted Garner's grip and sensation to touch as normal. (*Id.*) Dr. Robertson diagnosed Garner with back pain, but Dr. Robertson placed no limits on Garner's standing, walking, or sitting ability. (Tr. at 52, 54, 264.) Additionally, Dr. Robertson placed a 25-to-50-pound limit on Garner's lifting abilities, limitations on his postural abilities, and limitations on his ability to climb ladders and stoop. (Tr. at 52, 57-58, 264-65). Dr. Robertson's findings in Garner's ability to work was consistent with the record and did not impose greater limitations than the ALJ provided in the RFC. (Tr. at 22.)

On June 22, 2016, Garner visited UAB after being seen in the emergency department for a right leg injury from moving a television. (Tr. at 267.) Dr. Candice Dubose conducted a motor exam in which Garner scored a 4/5. (Tr. at 270.) Dr. Dubose found a minimal displaced fracture in Garner's X-ray. (Tr. at 271.) Dr. Dubose's medical

14

impression and plan for Garner included non-weight bearing ("NWB"). (Tr. at 270-71.) Then, on July 6, 2016, Plaintiff's X-ray was reviewed, and it was found that Plaintiff's fracture was healing. (Tr. at 277-78.)

On August 15, 2016, Garner returned to UAB for a follow-up, where he reported being able to walk and was full weight bearing ("FWB") at that time. (Tr. at 279.) On October 27, 2016, Garner reported to Cooper Green for a follow-up relating to his right leg pain, and he reported that the pain was getting better, though it still hurt sometimes. (Tr. at 292.)  He alleged using a wheelchair to get around despite physical examinations in which he was classified as being FWB. (Tr. at 35, 279, 293.)

As is shown by the foregoing, the ALJ's decision to discount Garner's allegations of not being able to work due to back and neck pain is supported by substantial objective medical evidence, including the diagnostic test results, physical examination findings, and reported activity. (Tr. at 54, 174, 177-78, 247-48, 257-58, 260-65, 267, 270-71, 277-79, 292-93, 298-99.) Indeed, the ALJ acknowledged that the record showed Garner had physical impairments, but his impairments would not prevent him from working altogether, as additional limitations were imposed. (Tr. at 23.)

## B.   Treatment History

The ALJ also found that Garner received minimal treatment for his alleged impairments. Garner claims that the ALJ downplayed or omitted key treatment records. He emphasizes that he underwent an evaluation for his neck pain in 2012 where he was assessed as having chronic neck pain. (Tr. at 230.) He also points out that in 2016 and later in 2017, he reported chronic pain in his back, neck, and leg.

The ALJ considered these treatment records and stated that the lumbar spine X-ray was normal except for some degenerative changes, which she assessed as severe and included in the RTC limitations on May 13, 2016. (Tr. at 23, 259-60.) The ALJ also considered Garner's complaints of neck and back pain in which his physical examinations showed muscle spasms, but his straight leg test was negative, and his extremities showed a normal range of motion. (Tr. at 21, 54, 257, 263.)  Garner was indeed diagnosed with having chronic neck pain during his examination by Dr. Leverly, a neurologist, in 2012. (Tr. at 228-30.) However, Dr. Leverly reported Garner as having no difficulty getting on and off the exam table. (Tr. at 228, 230.) The ALJ gave Dr. Leverly's opinion no weight because it was given several years prior to the onset date and thus, did not relate to the

16

current disability claim. (Tr. at 22, 227-31.) Therefore, the ALJ properly considered the treatment records to partially evaluate Garner's complaints and determine the impact of his impairments. *See* 20 C.F.R. § 404.1545(a)(3) (ALJ considers all relevant evidence to determine claim); *see also Wilson*, 284 F.3d at 1225−26.

### C. Daily Activities

Garner also argues that the ALJ erred when finding that his daily activities and ability to perform personal care tasks were inconsistent with his allegations of pain. Garner testified that he was unable to stand for a long period of time to prepare meals and that his brother helps him with the laundry. However, Garner could cook, purchase cigarettes and liquor, and use the bus for transportation. (Tr. at 257-58, 261-62.) In addition, Garner was able to move a television in June of 2016. (Tr. at 267.) Moreover, Garner's allegation that he used a wheel chair is contradicted by the finding from UAB that he was "full weight bearing" by August of 2016. (Tr. at 281-84, 287.) Despite this testimony and allegations of pain, his physical examination noted that he had a normal gait and was able to get on and off the exam table without assistance. (Tr. at 21-22, 262-63). Additionally, Garner continued to work for years doing medium labor jobs despite his neck injury from

the 1990s and the alleged pain associated with it. (Tr. at 44, 46-47, 200-01, 555.)

## IV. Conclusion

Upon review of the administrative record, and considering Garner's argument, this Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** on August 5, 2020.

L. Scott Coogler
United States District Judge

201416

18